# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JULIE CHARBONNEAU : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO. 13-4323 |
| v. : | |
| : | |
| CHARTIS PROPERTY CASUALTY CO., : | |
| : | |
| Defendant. : | |

## MEMORANDUM

YOHN, J.                                                                                           March 26, 2014

      Julie Charbonneau ("Charbonneau") brings this diversity suit against Chartis Property Casualty Co. ("Chartis"), an insurance company, claiming violations of contractual rights to proceeds from an insurance policy that had been assigned to her by Jerald Batoff.  Chartis now moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Charbonneau's action is barred by the principles of claim preclusion, issue preclusion, accord and satisfaction, and release. Chartis argues in the alternative that Charbonneau has failed to state claims for breach of contract, breach of good faith and fair dealing, bad faith, and tortious interference with a contract.  For the following reasons I will deny the motion to dismiss.

**I. FACTUAL AND PROCEDURAL HISTORY[1]**

Jerald Batoff owned the property located at 200 South Ithan Avenue, Villanova, Pennsylvania ("the Property"). He purchased a homeowner's insurance policy from Chartis that covered the Property from September 9, 2011 through September 9, 2012 ("the Chartis policy"). Under the Chartis policy the Property's coverage limit was $22,372,762. However, the policy also included a "Guaranteed Rebuilding Cost Coverage" that provided: "for a covered loss we will pay the reconstruction cost of your house or other permanent structures, for each occurrence, even if this amount is greater than the amount of coverage shown on the Declarations Page," provided repairs and rebuilding is initiated within two years from the date of loss. (Def. Mot. to Dismiss ("Mot.") Ex. B, at 2.)[2] The Chartis policy contained a non-assignment clause that provided: "no one covered under this policy may assign or turn over any right or interest in regard to the policy without our written consent." (Mot. Ex. B, at 12.)

---

[1] When faced with a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* As the Third Circuit explained, "[t]he rationale underlying this exception is that the primary problem raised by looking to the documents outside the complaint – lack of notice to the plaintiff – is dissipated where the plaintiff has actual notice…and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). Finally, while a court may consider the documents related to a prior litigation in resolving a claim preclusion affirmative defense in a 12(b)(6) motion to dismiss, the mere mention of the prior litigation in the complaint does not permit the court to consider all documents related to the prior litigation. *Brody v. Hankin*, 145 Fed. Appx. 768, 772 (3d Cir. 2005) (holding that the court could only consider the documents related to the prior action that plaintiffs explicitly referred to in their complaint). Of the eight exhibits Chartis appends to its motion to dismiss, I may consider the lease agreement between Charbonneau and Batoff (Exhibit A), Batoff's homeowner's insurance policy with Chartis (Exhibit B), the agreement between Chartis and Batoff relating to insurance proceeds under the policy (Exhibit C), Batoff's complaint in the prior action (Exhibit E), Charbonneau's answer and counterclaim in the prior action (Exhibit F), and the settlement agreement between Batoff and Charbonneau in the prior action (Exhibit H), as Charbonneau's complaint relies on these documents.

[2] Reconstruction cost is defined to mean "the lesser of the amount at the time of the loss required to: (a) [r]estore or repair a structure; or (b) [r]eplace or rebuild a structure at the same location; with materials of like kind and quality. Reconstruction cost does not include any amount required for the excavation, replacement or stabilization of land under or around a structure."

On November 3, 2011, Batoff entered into a five year lease agreement with Julie Charbonneau for the Property which contained an option to purchase ("the Lease")[3]. Under the Lease, Charbonneau paid 2.16 million dollars in nonrefundable deposits toward the purchase of the Property. According to the Lease, Charbonneau could elect to exercise the option to purchase in the event of any casualty to the property the cost of which to repair would exceed one million dollars. If she exercised the purchase option following a loss, the Lease entitled Charbonneau "to receive at closing a credit in the amount of any insurance proceeds paid to [Batoff], and an assignment of [Batoff's] rights to receive any unpaid proceeds." (Mot. Ex. A, at 7.) The assignment permitted Batoff to make proof of loss, but "any adjustment of a proof of loss [required] the prior written consent of [Charbonneau]." (Mot. Ex. A, at 7.)

On April 4, 2012, the Property suffered a catastrophic fire that caused extensive damage. Relying on the alleged assignment clause for the Chartis policy in the Lease, Charbonneau decided to rebuild the Property. To that end Charbonneau retained Clarke & Cohen ("C&C"), a public adjusting firm, to prepare her insurance claims and protect her interests under the insurance policy.[4] Charbonneau also "participated in the selection of, and approved, a contractor, CDF Construction Inc. ("CDF"), to prepare a report on the necessary costs to rebuild [the Property]."[5] (Compl. ¶ 30.) CDF estimated that it would cost approximately thirty-five million dollars to restore the Property to its pre-loss condition.

---

[3] Dean Topolinski, an acquaintance of Charbonneau, was joined to the Lease by agreement of the parties. Topolinski is not a party in the present action.

[4] Charbonneau alleges that she retained C&C to represent her interests both with regard to her rights to the Chartis homeowner's policy assigned to her in the Lease and her own policy with Chartis insuring the contents of the premises. The contents policy is not at issue in the present action.

[5] It is not clear from the complaint who else may have participated in selecting CDF. However, the complaint alleges that Batoff "later concealed [CDF's] report from Charbonneau" implying that, at least, Batoff was part of this process.

### A. The Batoff/Charbonneau Litigation and Settlement Under the Lease

Charbonneau alleges that she exercised the purchase option in the Lease on or before August 7, 2012. (Compl. ¶ 11.) On August 15, 2012, Batoff filed a civil action, challenging Charbonneau's right to acquire the Property under the purchase option of the Lease. In the complaint first filed in the Delaware County Court of Common Pleas and then removed to this court, Batoff claimed a breach of contract and sought a declaratory judgment that: (1) Charbonneau had no exercisable purchase option under the Lease; (2) the Lease was null and void; (3) Charbonneau had no claim against the proceeds of any insurance claim under the Chartis policy; and (4) Charbonneau had no right to participate in any settlement discussions of the insurance claim under the Chartis policy. Charbonneau filed counterclaims on October 1, 2012 and amended counterclaims on October 22, 2012. In her amended counterclaims, Charbonneau requested: (1) a declaratory judgment that she validly obtained and exercised the purchase option in the Lease and consequently had a right to the insurance proceeds; (2) specific performance; (3) breach of contract; and (4) unjust enrichment.

On April 5, 2013 Batoff and Charbonneau reached a settlement agreement ("Batoff/Charbonneau settlement") in which the parties agreed to the following terms:

(1) The 17.4 million dollars in insurance proceeds paid to Batoff under the Chartis policy, and placed in escrow by order of this court, would be distributed to the parties with 11 million dollars going to Charbonneau and 6.43 million dollars going to Batoff. The parties also agreed to submit a stipulation to the court to vacate the temporary restraining order holding the funds.

(2) Batoff would convey the Property to Charbonneau.

(3) Batoff would terminate the pending actions in the matter.

(4) Personal property, furnishings, architectural, and other items salvaged from the Property after the fire would belong to Charbonneau.

  (5) The parties agreed to release each other related to "any claims asserted directly or indirectly in the Civil Actions, which the parties ever had, now have, or hereafter have or claim to have against each other." The release also included any claims that may have been assigned to the party, including any claims "that may have been assigned by Chartis Property Casualty Co. to Batoff."

(Mot. Ex. H, at 2-4).

### B. The Chartis/Batoff Agreement for Insurance Proceeds Under the Homeowner's Policy

On October 1, 2012, nearly two months after Charbonneau alleges she exercised the purchase option for the Property, and Batoff and Charbonneau were in litigation, Chartis agreed to pay Batoff 18.5 million dollars under the Chartis policy ("Chartis/Batoff agreement"). (Compl. ¶ 51.) The Chartis/Batoff agreement followed nearly two months of negotiations between Chartis and Batoff to which Charbonneau was not privy. (Compl. ¶ 50.)

Charbonneau alleges that Chartis entered into the Chartis/Batoff agreement despite notice of the assignment clause for the Chartis policy in the Lease, despite notice that Charbonneau had exercised her option to purchase, and despite notice that Charbonneau intended to restore the property. (Compl. ¶¶ 32-34, 38, 42, 52.) Specifically, Charbonneau alleges: (1) that, within two weeks of the April 4, 2012 fire, Chartis obtained a copy of the Lease containing the assignment clause for the Chartis policy (Compl. ¶ 32.); (2) that Chartis's own internal report, on April 12, 2012, acknowledged that "the current lease includes language to the effect that [Charbonneau] would be the beneficiary of any insurance proceeds due [Batoff] in the event of any building property damage loss occurring during the term of the lease agreement" which "effectively means [Charbonneau] is due any/all insurance proceeds that may be due Mr. Batoff under the terms of the policy" (Compl. ¶ 38.); (3) that a Chartis report on April 27, 2012 acknowledged that "[t]he lease also included an assignment clause that required the owner (Batoff) to assign any property insurance proceeds (such as our policy) to [Charbonneau] in the event of a

5

casualty/loss"; (4) that Chartis was aware that Charbonneau intended to restore the residence and that restoration would cost more than the $22,372,762 coverage limit for the Property in the event it was not restored (Compl. ¶ 34.); (5) that on August 7, 2012 Chartis was informed that Charbonneau had exercised the option to purchase the Property (Compl. ¶ 42.); and (6) that Chartis was aware that Charbonneau and Batoff were embroiled in litigation to determine the ownership rights of the Property and, consequently, the insurance proceeds. (Compl. ¶¶ 48-49.)

### C. Procedural History

On July 25, 2013, Charbonneau filed a complaint in this court alleging that Chartis failed to satisfy its obligations to Charbonneau under the Chartis policy. Charbonneau claims breach of contract, breach of the implied duty of good faith and fair dealing, intentional interference with contractual relations, and bad faith in violation of 42 Pa. Const. Stat. § 8371. On September 20, 2013, Chartis moved to dismiss Charbonneau's complaint. Charbonneau responded on October 24, 2013 and Chartis replied on October 31, 2013.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. In deciding a motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. *Res Judicata* or Claim Preclusion

As an initial matter, neither party addressed the choice of law question in this case. Chartis seems to apply federal law in arguing the preclusive effect of the prior diversity case at issue here; however, it cites interchangeably to cases interpreting both federal and Pennsylvania law. *See, e.g., Inofast Mfg. v. Bardsley*, 103 F. Supp. 2d 847, 848-849 (E.D. Pa. 2000) (applying federal law in a federal question case when analyzing the preclusive effect of a prior judgment); *Jett v. Beech Interplex, Inc.*, No. 02-9131, 2004 U.S. Dist. LEXIS 13352, *8 n.10 (applying state law in a diversity case when analyzing the preclusive effect of a prior state court judgment). As a general rule, state law governs the preclusive effect of a prior state court judgment on a subsequent diversity case, *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988). However, the Third Circuit has held that the "the preclusive effect of a judgment is determined by the preclusion law of the issuing court." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999) (holding that federal law determines the preclusive effect of a prior judgment in successive diversity cases). As the Batoff/Charbonneau settlement disposed of a prior federal action, federal law applies to its preclusive effect.

Chartis argues that principles of *res judicata* or claim preclusion bar Charbonneau from bringing this suit. In its argument for claim preclusion, Chartis references both the Chartis/Batoff agreement under the Chartis policy and the Batoff/Charbonneau settlement with regard to the litigation over the purchase option in the Lease.  It is not precisely clear whether Chartis is arguing that the Chartis/Batoff agreement and the Batoff/Charbonneau settlement each acts independently to preclude Charbonneau's instant claims, or whether some combination of the two work together to preclude the claims.  Regardless, Chartis's argument is unavailing.

"Claim preclusion prevents a party from prevailing on issues [s]he might have but did not assert in the first action."  *Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988).  To establish claim preclusion, the defendant must demonstrate that there has been "(1) a final judgment on the merits of a prior suit involving (2) the same claim, and (3) the same parties or their privies" *Equal Employment Opportunity Comm. v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990).  "A somewhat modified form of [claim preclusion] applies if a settlement agreement triggers a dismissal and a defendant's consequent discharge."  *Toscano v. Connecticut General Life Insurance Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (internal quotations and citations omitted).  The bounds of the preclusive effect of court-approved settlements are determined by the "express terms of a settlement agreement."  *Id.* at 38.

To determine whether claims are identical for the purposes of claim preclusion the court must consider: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been

sufficient to support the first); and (4) whether the material facts alleged are the same." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 98 (3d Cir. 1984).

    1. <u>The Batoff/Charbonneau Settlement</u>

In the previous litigation the Lease was the contractual basis for Charbonneau's claims against Batoff.  It did not involve any claims as to whether Chartis had properly valued, adjusted or evaluated the loss.  Indeed, Chartis was not a party.  By contrast, in the current litigation, the Chartis policy is the contractual basis for Charbonneau's claims against Chartis.  The fact that Charbonneau previously settled with Batoff for her contractual rights under the Lease does not somehow bar Charbonneau from now suing Chartis for violating her alleged contractual rights under the Chartis policy.  This remains so despite the fact that whatever contractual rights Charbonneau might have under the Chartis policy derive from the Lease that was the subject of the Batoff/Charbonneau settlement.  The causes of action cannot be said to be identical because the acts complained of allege breaches of entirely different contracts, by entirely different parties.

Further, the terms of the Batoff/Charbonneau settlement are strictly limited to dispensing the money that Batoff had already recovered under the Chartis policy, transferring title of the Property to Charbonneau, and releasing Batoff and Charbonneau from any further claims they might have against each other.  In fact, the "express terms" of the Batoff/Charbonneau agreement do not even address either the alleged assignment of the Chartis policy to Charbonneau or the potential insurance proceeds owed under the guaranteed rebuilding cost clause, which are the essential claims of Charbonneau's current suit.  *See*, *Toscano*, 288 F. App'x at 38.  Moreover, the language of the settlement agreement specifically states in paragraph four that the agreement

relates only to "any claims asserted directly or indirectly…against each other." Accordingly, the terms of the Batoff/Charbonneau settlement do not bar Charbonneau's claims against Chartis.

    2. The Chartis/Batoff Agreement

The Chartis/Batoff agreement in which Chartis agreed to pay Batoff 18.5 million dollars under the Chartis policy has no preclusive effect. The agreement consisted of terms agreed to between the parties and was not approved by a court, nor did the agreement dispose of pending litigation between the parties. *See Id.* Charbonneau was not a party to the negotiation or the settlement and the settlement did not relate to her claims under the insurance policy, only those of Batoff. And because the Chartis/Batoff agreement has no preclusive effect, no combination of the Chartis/Batoff agreement and the Batoff/Charbonneau settlement bars Charbonneau's current claims.[6]

### B. Collateral Estoppel or Issue Preclusion[7]

Chartis next argues that Charbonneau's action is barred by the doctrine of collateral estoppel or issue preclusion. But, as the Third Circuit has instructed in a case that Chartis itself cites earlier in its brief, "[s]ettlement agreements involve claim preclusion, not issue preclusion." *Toscano*, 288 F. App'x at 38 n.2 (citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505-06 (1953) (explaining that settlement agreements do not indicate "whether the agreement of the parties was based on the merits or on some collateral consideration")). Accordingly, the

---

[6] Chartis also argues that Charbonneau was in privity with Batoff when Batoff released Chartis. But Charbonneau and Batoff were in litigation at the time. As adversaries, Batoff certainly was not adequately representing Charbonneau's interests when it negotiated with Chartis, and therefore Batoff could not have been in privity with Charbonneau for claim preclusion purposes.

Chartis next argues that it was in privity with Batoff when Charbonneau released her claims against Batoff. Not so. Although Charbonneau has sued two different defendants, the suits involve completely separate claims. One claim is under the Lease, the other is under the Policy.

[7] Again, the parties do not address the choice of law question here. Chartis applies Pennsylvania law in its argument. However, as discussed above, the Third Circuit has held that the "the preclusive effect of a judgment is determined by the preclusion law of the issuing court." *Paramount Aviation Corp*, 178 F.3d at 135. Thus, federal law controls.

Batoff/Charbonneau settlement does not preclude Charbonneau from litigating the issues in the instant action.

    **C. The Doctrines of Accord and Satisfaction and Release**

Chartis next argues that the doctrines of accord and satisfaction, and release bar Charbonneau's claims. This argument is also unavailing. The Batoff/Charbonneau settlement was an accord between Batoff and Charbonneau that satisfied the claims Batoff made against Charbonneau. The settlement was in no way an accord between Charbonneau and Chartis, nor did it settle or in any way involve the claims Charbonneau now makes. Similarly the release in the Batoff/Charbonneau settlement released Batoff from any further related claims Charboneau might have. As clearly stated, the release applies "to any claim asserted directly or indirectly in the Civil Actions, which the parties ever had, now have, or hereafter may have or claim to have *against each other*" (emphasis added). Thus, the release is limited to claims the parties have "against each other." As Chartis was not a party to the Batoff/Charbonneau settlement, it does not benefit from the release. And while the Batoff/Charbonneau settlement makes clear that the release includes any "claims that may have been assigned by Chartis Property Casualty Co. to Batoff," the settlement does not release Chartis from such claims. Accordingly the doctrines of accord and satisfaction, and release do not bar Charbonneau's instant action.

    **D. Failure to State a Claim**

Finally, Chartis argues that Charbonneau fails, as a matter of law, to state any claim upon which relief may be granted.

    1. <u>Breach of Contract, Breach of Good Faith and Fair Dealing, and Statutory Bad Faith Claims</u>

Chartis grounds its entire failure to state a claim argument on its contention that because Charbonneau is not a party to the Chartis policy no contractual relationship exists between

Charbonneau and Chartis. In response, Charbonneau argues that the assignment clause in the Lease created that contractual relationship. In reply, Chartis argues that the non-assignment clause in the Chartis policy prohibited assignment without Chartis's consent.

Under Pennsylvania law, "a non-assignment clause in an insurance contract is not enforceable after the loss has occurred." *Egger v. Gulf Ins. Co.*, 903 A.2d 1219, 1224 (Pa. 2006) (citing *Nat'l Mem'l Services, Inc. v. Metro. Life Ins. Co.*, 48 A.2d 143, 144 (Pa. Super. 1946) *aff'd*, 49 A.2d 382 (Pa. 1946)). As the court explained, a non-assignment clause prior to the loss understandably limits "the right of the insured to assign his interests in a policy as otherwise some improvident or undesirable assignee might allow the policy to lapse for the nonpayment of premiums." *Nat'l Mem'l Service, Inc.*, 48 A.2d at 144. However, "[a]fter a loss has occurred, the right of the insured or his successor in interest to the indemnity provided in the policy becomes a fixed and vested right; it is an obligation or debt due from the insurer to the insured, subject only to such claims, demands, or defenses as the insurer would have been entitled to make against the original insured." *Id.*

Here, it is not clear exactly when the assignment from Batoff to Charbonneau occurred.[8] The assignment clause in the Lease existed prior to the loss. However, the clause states: "If the cost to repair any damage is more than $1,000,000, [Charbonneau] may elect to exercise [her] Option, and shall be entitled to receive at closing a credit in the amount of any insurance proceeds paid to [Batoff], and an assignment [of] all of [Batoff's] rights to receive any unpaid proceeds." Thus, the assignment clause in the Lease may be interpreted as merely an agreement to assign, and did not become an actual assignment until either a determination that damages from the loss exceeded one million dollars, or when Charbonneau exercised her option to

---

[8] In its brief, Chartis looks to the date of the insurance policy, arguing that the non-assignment clause in the insurance policy predated the loss and therefore validly prohibits Batoff from assigning his benefits to Charbonneau. But the proper date to consider in relation to the loss is the date of the assignment.

12

purchase, or at closing. *See, e.g., Seneca Ins. Co., Inc. v. Lexington Concord Search & Abstract, LLC*, 484 F. Supp. 2d 374, 379 (E.D. Pa. 2007) (citing *Conrad Bros. v. John Deere Ins. Co.*, 640 N.W.2d 231, 238 (Iowa 2001) (holding that an assignment clause that existed in a mortgage before the loss, did not become an actual assignment until the filing of the deed)). As Charbonneau has alleged that the insurance policy was assigned to her creating contractual rights between Chartis and Charbonneau after all three of the above events, and Chartis has not established, as a matter of law, that the assignment did not create those rights, Charbonneau has sufficiently stated a claim for breach of contract, breach of good faith and fair dealing, and statutory bad faith.

2. Tortious Interference

The elements for tortious interference with a contractual relation are (1) the existence of a contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997). Chartis argues that the facts alleged in the complaint fail, as a matter of law, to establish the second and third elements.

"Purposeful action intended to harm an existing contract can exist where the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." *Odyssey Waste Service, LLC v. BFI Waste Systems of North America, Inc.*, No. 05-1929, 2005 U.S. Dist. LEXIS 28682, *15 (November 17, 2005) (internal quotations omitted). Charbonneau alleges in her complaint that, at the time Chartis negotiated with Batoff and entered into the Chartis/Batoff agreement, without

Charbonneau's knowledge, Chartis was aware: (1) that the assignment clause contained in the Lease entitled Charbonneau to both the insurance proceeds and the insured's rights to receive any unpaid proceeds if Charbonneau exercised the purchase option following the fire; (2) that under the assignment clause Batoff was required to get Charbonneau's prior written consent for any adjustment; (3) that Charbonneau did, in fact, exercise the purchase option; (4) that Charbonneau intended to restore the Property at a cost far in excess of the coverage limit for the loss itself thereby potentially triggering the guaranteed rebuilding cost coverage clause in the Chartis policy; and (5) that Batoff and Charbonneau were engaged in litigation regarding ownership of the Property and consequently the Chartis policy. Taking these allegations as true, as the court must do in a motion to dismiss, a reasonable inference can be drawn that Chartis knew that its agreement with Batoff would be certain, or substantially certain, to interfere with Charbonneau and Batoff's contractual relations.

The absence of privilege or justification is established when the plaintiff shows that the defendant's "actions were improper." *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 934 (Pa. Super. 2013). The second and third elements of tortious interference are "closely intertwined." *Id.* "Courts require a showing of both harm and improper conduct because we have recognized that some intentionally harmful conduct is done at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff." *Id.* Again, the complaint alleges that Chartis negotiated with Batoff despite knowing about the assignment clause in the Lease, and that Charbonneau had exercised the option to purchase, potentially triggering the assignment clause. Under these facts, as alleged, it cannot be said, as a matter of law, that Chartis's negotiations with Batoff were privileged, because it is not even clear that Batoff had any right to the insurance proceeds. If Batoff had no right to the insurance

proceeds, and Chartis was aware of this fact, then Chartis was not protecting any legitimate interest when it proceeded to negotiate with Batoff, absent Charbonneau's knowledge or consent. Accordingly, Charbonneau has sufficiently stated a claim for tortious interference.

## IV. CONCLUSION

For the foregoing reasons, I will deny the motion to dismiss. An appropriate order follows.