# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE CHARBONNEAU,<br><br>                              Plaintiff,<br><br>        v.<br><br>CHARTIS PROPERTY CASUALTY CO.<br><br>                              Defendant. | CIVIL ACTION<br><br>No.:  13-4323 |

## PLAINTIFF JULIE CHARBONNEAU'S SUR-REPLY IN OPPOSITION
## TO CHARTIS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby submits this Sur-reply in Opposition to Chartis' Motion for Summary Judgment to address a new argument that Chartis raised for the first time at the hearing on October 1, 2014. Specifically, Chartis asserted that Ms. Charbonneau did not receive an assignment of Mr. Batoff's rights under the homeowner's insurance policy because the provision in the Purchase Option Agreement between Batoff and Ms. Charbonneau that gave Ms. Charbonneau the right to accept or reject a settlement of the insurance claim was not binding upon Chartis. Chartis further argued that the right to accept or reject a settlement was not assignable because only the "fixed" claim amount can be assigned. Those arguments are contrary to settled Pennsylvania law.

When an option to purchase real estate is exercised after a casualty loss, as happened in this case, upon exercising the option the optionee is deemed the owner of the property from the date of the purchase option agreement, and is entitled, as a matter of law, to the insurance proceeds unless the option agreement provides otherwise.  Shaffer v. Flick, 520 A.2d 50 (Pa. Super. 1987).   The Purchase Option

1

Agreement in this case demonstrates a clear intent that the rights to all of the insurance proceeds for a loss would be conveyed to Plaintiff at the time that she exercised her option. If such intent is not clear, then there is an issue of material fact requiring discovery. See id. at 53 (court considered witness testimony when interpreting ambiguous assignment clause and found that the parties did not intend for the lessor to reap an insurance windfall).

The Purchase Option Agreement ensures that Ms. Charbonneau will receive all of the benefits relating to the insurance claim in two ways. First, it provides that she would receive a credit for all insurance payments made to Mr. Batoff and an assignment of his rights to future payments. Second, it provides that "any adjustment of a proof of loss shall require the prior written consent of Tenant." [Purchase Option Agreement, ECF Doc. # 9–1, ¶ 17]. Thus, under Shaffer, she was entitled to the insurance proceeds no later than the time she exercised her option on August 7, 2012,[1] as long as she can demonstrate in this case that she had that right. If Mr. Batoff's refusal to recognize her rights was wrongful, that could not defeat her right to exercise the option or her right to the insurance proceeds. See 1 Williston on Contracts § 5:16 (4th ed.) (2013).  This Court stated in its ruling on the motion to dismiss that the Purchase Option Agreement was unclear as to when the assignment became effective, noting that it could be when a loss is known to exceed $1 million — which was clear on the day of the fire — or when Ms. Charbonneau exercised her option, or at closing. [Memorandum, ECF Doc. # 15, at 12–13]. As explained above, the assignment of the

---

[1] Under the Purchase Option Agreement, the only step necessary to exercise her option was to send this letter. [Purchase Option Agreement, ECF Doc. # 9–1, ¶ 5(a)(i)].

claim proceeds should be considered effective no later than August 7, 2012 when Ms.

Charbonneau exercised her option, having paid over $2 million in deposits toward the

purchase of the property as well as the cost of the insurance.  [August 7, 2012,

correspondence, ECF Doc. #34, Exh. 4; Compl. ¶ 20].  Even if that is not clear from the

provision in question, it is consistent with the analysis in <u>Shaffer</u> that in the event of

ambiguity the court should enforce the "'reasonable, probable and natural intent of the

parties, bearing in mind the objects manifestly to be accomplished.'"  <u>Shaffer</u>, 520 A.2d

at 53 (<u>quoting</u> <u>O'Farrell v. Steel City Piping Co.</u>, 266 Pa. Super. 219, 229 (1978)).  The

<u>Shaffer</u> Court further stated that it was obligated to do equity between the parties, which

in this case requires that the Agreement not be interpreted to have allowed Batoff to

defeat Plaintiff's contractual rights by wrongly refusing to acknowledge them.  <u>Id</u>.  Again,

in the event of ambiguity, there is a material issue of fact.  <u>Shaffer</u>, 520 A.2d at 53.

When Chartis entered into its secret settlement with Batoff it knew that Plaintiff had

exercised her option and it assumed the risk that she was entitled to the insurance

proceeds.

   Chartis' argument that the right to accept or reject a settlement was not

assigned or binding upon it is incorrect. The notion that only the right to a "fixed" claim

amount can be assigned is contrary to the rule that all rights with respect to an

insurance claim can be assigned once a loss has occurred. The assignment is for the

insurance claim itself, not just the proceeds. <u>See</u> <u>Egger v. Gulf Ins. Co.</u>, 588 Pa. 287

(Pa. 2006). The right to accept or reject a settlement is part of the rights to the claim,

and is therefore clearly assignable. Under the plain meaning of the Purchase Option

Agreement, such an assignment occurred in this case upon the happening of the loss,

3

and was not contingent upon Ms. Charbonneau exercising her option. That assignment is binding upon Chartis like any other assignment of rights to an insurance claim and did not require its consent. Indeed, the law is clear that assignments of insurance claims can be made without insurer consent. See, e.g., Egger, 588 Pa. 287 (2006). Also, there is no need to use the word "assignment" if the intent to assign is nonetheless clear. See, e.g., Ifert v. Miller, 138 B.R. 159, 164–165 (E.D. Pa. 1992) (citing Samuel Williston, A Treatise on the Law of Contracts § 424 (3d ed. 1960) ("No words of art are required to constitute an assignment . . . .")).

Further, to the extent Chartis is now arguing that the right to accept or reject an insurance settlement, and the right to the insurance proceeds, were not conferred upon plaintiff because Batoff disputed her right to exercise the option, that position is incorrect for two reasons. First, as discussed above, all of Ms. Charbonneau's rights to the insurance claim were conferred, as a matter of law, no later than the exercise of her option. See Shaffer, 520 A.2d at 50. The only way that such rights could not have been conferred at that time would be if Ms. Charbonneau in fact had no right to exercise her option, which is an issue of fact to be resolved in this case. Second, even if she did not have the right to exercise her option she was still entitled to control the settlement of the claim, because that right was not tied to the option.

Moreover, Chartis' argument that no rights were ever assigned to Ms. Charbonneau because the litigation between her and Batoff settled is not only contrary to law but also ignores the fact that the settlement only applied to claims between them and expressly provides that there would be no third party beneficiaries. Thus, as this court recognized in denying the Motion to Dismiss, "[t]he fact that Charbonneau

4

previously settled with Batoff for her contractual rights under the Lease does not somehow bar Ms. Charbonneau from now suing Chartis for violating her alleged contractual rights under the Chartis policy." [Memorandum, ECF Doc. # 15, at 9].

For all of the foregoing reasons, as well as the reasons set forth in Ms. Charbonneau's opposition brief and at oral argument, Chartis's Motion for Summary Judgment should be denied.

ANDERSON KILL P.C.

By: */S/ DARIN J. MCMULLEN* (DM1057)

Finley T. Harckham
Darin J. McMullen
Matthew F. Putorti

1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: 267-216-2700

*Attorneys for Plaintiff*
*Julie Charbonneau*

5